UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:                                                              Case No.  10-73014-ast

Jude Thaddeus Partners 1, Inc.                                      Chapter 11
a/k/a
Jude Thaddeus Partners I, Inc.,

                                          Debtor.
---------------------------------------------------------------X

## <u>MEMORANDUM OPINION ON MOTIONS TO DISMISS OR CONVERT</u>

Pending before the Court in the above referenced chapter 11 case are the motion to

dismiss this case (the "Motion to Dismiss") filed by Debtor, Jude Thaddeus Partners 1, Inc.

("Debtor")[dkt item 31],[1] the objection to Debtor's Motion to Dismiss filed by Debtor's primary

creditor, SPCP Group, LLC ("SPCP" and the "SPCP Objection") [dkt item 34], and SPCP's

motion to convert this case to chapter 7 (the "Motion to Convert"). [dkt item 37]  This Court

conducted an evidentiary hearing on the Motion to Dismiss, the SPCP Objection, and the Motion

to Convert on September 15, 2010 (the "Hearing").

By the Motion to Dismiss, Debtor seeks dismissal of this case due to its inability to

effectively liquidate its assets and reorganize.  By the Motion to Convert, SPCP, as the largest and

sole secured creditor of the Debtor's estate,  asserts that Debtor filed this case in bad faith, and

requests this Court convert this case to chapter 7, to allow a chapter 7 trustee to investigate the

affairs of Debtor, and, potentially, liquidate the real property owned by Debtor.  Notably, the

Motion to Dismiss and the Motion to Convert were both filed after Debtor defaulted under an

---

[1] References to the docket [dkt item –] are to the associated ECF entries for the main case; references to
Exhibits [Exh. ] are to exhibits admitted into evidence at the Hearing; and references to Transcript [Tr. at –]  concern
the official transcript from the Hearing, available at docket item 45.

adequate protection order, resulting in the automatic stay being lifted to allow SPCP to foreclose against Debtor's sole asset, certain real property.  For the reasons herein, this Court grants the Motion to Dismiss and denies the Motion to Convert.

## Procedural History

On April 26, 2010, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition" and the "Petition Date"). [dkt item 1]  On May 26, 2010, BMR Funding LLC ("BMR"), acting as alleged successor-in-interest to SPCP, filed a motion for relief from the stay ("Lift Stay Motion") as to the improved real property located at 76 Shore Road a/k/a 74 Shore Road, Glen Cove, New York (the "Property").  In the alternative to stay relief, in the Lift Stay Motion, BMR sought dismissal of Debtor's case. [dkt item 10]

On June 30, 2010, Debtor filed an objection to the Lift Stay Motion("Lift Stay Objection"). [dkt item 17]  Therein, Debtor challenged BMR's standing, asserted that it could provide adequate protection to BMR if it were the lawful holder of the liens against the Property, and stated that Debtor's principal had the financial wherewithal to purchase the Property.

On July 6, 2010, SPCP filed a Joinder to the Lift Stay Motion, and a reply to the Lift Stay Objection, asserting it was the lawful holder of the liens against the Property . [dkt item 19]  SPCP and BMR are hereafter referred to as  "Movants."

The Court held a hearing on the Lift Stay Motion on July 7, 2010 ("Lift Stay Hearing"). At the Lift Stay Hearing, by agreement between the parties, the Court conditionally granted the Lift Stay Motion.  Movants would obtain relief from stay to exercise their state law remedies if Debtor either failed to make certain adequate protection payments or did not satisfy certain conditions for the sale of the Property.  The Order conditionally granting the Lift Stay Motion

was entered on July 14, 2010 ("Conditional Order"). [dkt item 25]

Debtor immediately defaulted under the Conditional Order. On July 15, 2010, Movants filed a certification that Debtor had not made the first payments required by the Conditional Order. [dkt item 27] Accordingly, on July 21, 2010, this Court entered an Order granting Movants relief from the automatic stay, such that the Movants could continue enforcement of their rights and remedies regarding the Property, including conducting a foreclosure sale. [dkt item 29]

On July 23, 2010, Debtor filed its Motion to Dismiss. [dkt item 31]

On August 11, 2010, SPCP filed its Objection to the Motion to Dismiss. [dkt item 34]

On August 13, 2010, SPCP filed its Motion to Convert. [dkt item 37] The Court scheduled the Motion to Dismiss, the SPCP Objection, and the Motion to Convert for a hearing on September 15, 2010 (the "Hearing").

At the Hearing, the Court heard testimony from Joseph Weiser, principal of the Debtor, and Angela Dobrowsky of SPCP, and admitted various exhibits. The Court considers the facts as established at the Hearing and as admitted in the pleadings. The Court's findings weigh the evidence, including the determination of the credibility of the witnesses. The Court finds that both Weiser and Dobrowsky were, for the most part, credible.

## **Factual Background**

The Court makes the following findings of fact.

Joe Weiser ("Weiser") is the 100% shareholder and President of the Debtor. [dkt item 39]

Weiser is a previous owner of the Property. The Property includes a business operated as a restaurant. [dkt item 39 ¶3]

Joseph Ferrara is the principal of JJF Garage, Inc. d/b/a Steamboat Landing ("JJF"). [Exh.

14 ¶1]

Between 2000 and 2003, JJF rented the Property from Weiser to operate a restaurant. [Exh. 14 ¶3]

Weiser sold the Property to JJF for $2.5 million by a deed dated February 26, 2003. [dkt item 39 ¶3; 39-1¶5]

SPCP holds the first and second mortgages and notes on the Property in connection with commercial loans to JJF, the original borrower and mortgagor. The first note and mortgage are in the original principal amount of $1,333,000.00 (the "First Mortgage"). [Exhs. A, B]  The First Mortgage was recorded on March 13, 2003 in the Office of the Clerk of Nassau County. [Exh. U ¶3]  The second note and mortgage are in the original principal amount of Four Hundred Thousand and 00/100 Dollars ($400,000.00) (the "Second Mortgage"). [Exhs. C, D]  The Second Mortgage was also recorded on March 13, 2003 in the Office of the Clerk of Nassau County. [Exhs. U ¶¶7,8; D]

Subsequent to JJF's purchase of the Property from Weiser, JJF continued to operate the restaurant until 2006, when JJF agreed to sell the Property and the restaurant operations to an entity known as Big George LLC ("Big George"). [Exh. 14 ¶9]

Big George took over operations of the restaurant during the 2006 summer season prior to a closing on the purchase of JJF. [Exh. 14 ¶10]

Big George could not obtain financing for its purchase, and defaulted on its purchase contract with JJF, but refused to vacate the Property.  Litigation ensued between JJF and Big George. In the meantime, the restaurant at the Property closed.

JJF ultimately regained possession of the restaurant from Big George on or about December 3, 2006. [Exh. 14 ¶¶12-14]

JJF entered into a partnership with Howard Scheidler in order to reopen the restaurant prior to the 2007 summer season.  Although the restaurant was re-opened, the partnership with Scheidler failed.  The restaurant was then closed again at the end of the 2007 summer season. [Exh. 14 ¶¶16-17]

The restaurant was left in shambles when it was closed in 2007. [Exh. 14 ¶18]

On or about September 21, 2007, SPCP received an assignment of the First Mortgage and the  Second Mortgage. The assignments were recorded in the Nassau County Clerk's Office on November 12, 2007.  [Exh. U ¶¶ 6, 11]

Shortly after the assignments, JJF defaulted on its obligations to SPCP as a result of, among other things, its failure to pay certain debt service and outstanding real estate taxes when due. [Exh. U ¶13]

On January 7, 2008, SPCP commenced a foreclosure action in the Supreme Court of Nassau County captioned: *SPCP Group, LLC as successor-in-interest to BLX Capital LLC v. JJF Garage, Inc. d/b/a Steamboat Landing, John Ferrara, Joseph Ferrara, Maria Ferrara et al.*, under Index No. 00309-08 (the "Foreclosure Action").  In the Foreclosure Action, SPCP sought to foreclose under the Second Mortgage. [dkt item 38 ¶14]

During January of 2008, John Ferrara, the principal of JJF, contacted Weiser and inquired whether Weiser desired to purchase the Property from JJF. [dkt item 39 ¶¶6, 31; 39-1 ¶21] In considering whether to purchase the Property, Weiser conducted certain due diligence and discovered that Big George had filed a lis pendens against the Property in connection with a claim against JJF for $600,000.00.  Weiser also became aware that JJF was in default of its mortgage obligations to SPCP. [dkt item 39 ¶9]

Although he initially declined to purchase the Property from JJF in January 2008, Weiser

agreed to resume the restaurant operations and remained interested in purchasing the Property. [dkt item 39 ¶10]

Weiser spoke with Angela Dobrowsky of SPCP in January 2008 regarding his interest in purchasing the Property from JJF and in resuming restaurant operations at the Property.  Both Weiser and SPCP hired counsel to represent their respective interests and negotiations ensued. [dkt item 39 ¶11; Exh. 2]  Debtor asserts that prior to acquiring the Property from JJF, Weiser spoke with Ms. Dobrowsky and asked whether she would have any objection to the Debtor acquiring the Property from JJF.  Weiser contends Ms. Dobrowsky had no objection to the transaction and forwarded a confidentiality agreement in support of that contention. [dkt item 39 ¶11; Exh. 2]  Ms. Dobrowsky contends SPCP never knew about the proposed transfer and that no money was ever exchanged. [dkt item 38 ¶20]

In or about February 2008, Weiser formed The Wharf at Thaddeus Landing Inc. d/b/a The Wharf at Steamboat Landing,  (the "Wharf") for the purpose of leasing the Property from JJF and operating the restaurant at the Property. [dkt item 39 ¶12; Exh. 4]

On February 28, 2008, JJF entered into a written lease agreement (the "Lease") with the Wharf.  Under the terms of the Lease, the Wharf was to pay $1,000.00 a week in rent to operate the restaurant.  Weiser was the signatory on behalf of the Wharf on the Lease.  As of the Hearing, the Wharf was occupying the Property under the terms of the Lease. [dkt item 39 ¶13; Exhs. 3, F]

After the Lease was signed, it took many weeks to clean the space at the Property, remove outdated equipment, most of which was in disrepair, and ready the space for use as a restaurant. The Wharf spent many thousands of dollars of its own funds to do so.  [dkt item 39 ¶18; Exh. 5; Tr.at 30:6-15].

Weiser made the decision to make this investment in the restaurant even though the

Property was in the midst of a foreclosure.  Weiser believed that SPCP would sell its interest in the Property to him for fair market value and did not want the Property to become encumbered by additional junior liens. For that reason, Weiser requested that JJF transfer title of the Property to a new entity. [dkt item 39 ¶¶ 17, 19, 29]

The Wharf commenced restaurant operations in March 2008. [dkt item 39 ¶25]

After the Wharf commenced restaurant operations at the Property, Weiser undertook the task of removing the lis pendens filed by Big George against the Property. [Tr. at 34:3-8]  On July 23, 2008, the New York Supreme Court vacated the lis pendens filed by Big George against the Property. [dkt item 39 ¶27; Exh. 7]

Debtor was incorporated on or about July 17, 2008, for the specific purpose of obtaining title to the Property. [Exh. 8]

After months of due diligence and intervening proceedings to remove certain liens and encumbrances against the Property, Debtor acquired the Property from JJF by deed dated October 17, 2008, for the stated consideration of $2,023,153.67.  This deed was recorded in Nassau County on October 21, 2008, and recording taxes were paid. [Exhs. 9, I]

The Property is Debtor's only asset. [dkt item 39 ¶32; Tr. at 54:1, 89:18-23]

On January 26, 2009, SPCP assigned the First Mortgage and Second Mortgage to BMR Funding LLC ("BMR"). [Exh. U ¶12]  Despite the assignment of the Second Mortgage to BMR, SPCP proceeded to file pleadings in the Foreclosure Action as if it were the owner of the Second Mortgage. [Exh. 11]

Subsequent to the execution of the Lease, all rental payments were made by the Wharf to JJF until July 2009, at which time SPCP obtained an order in the Foreclosure Action appointing a receiver to collect weekly rental payments from the Property.  During the tenure of the Receiver's

appointment, the Wharf has continued to make weekly rental payments to the Receiver in accordance with the Lease. [dkt item 39 ¶21]

The defendants[2] in the Foreclosure Action failed to respond to SPCP's motion for a judgment of foreclosure.  Consequently, by Order dated January 20, 2010, SPCP's unopposed motion for a judgment of foreclosure, confirmation of the referee's report, and an award for counsel fees and costs was granted.  On March 12, 2010, the Nassau County Clerk entered a judgment of foreclosure in favor of SPCP (the "Foreclosure Judgment"). [dkt item 38 ¶17; Exh. G]

After receiving the Foreclosure Judgment, SPCP proceeded with seeking foreclosure of the Property.  A foreclosure sale was scheduled for April 27, 2010. [dkt item 38 ¶23]

On April 26, 2010, Debtor filed this chapter 11 case, and the foreclosure sale was stayed. [dkt item 1]

On May 26, 2010, BMR filed the Lift Stay Motion. [dkt item 10]  In the Lift Stay Motion, BMR requested dismissal of Debtor's case and alleged the existence of numerous badges of faith. BMR further argued that its dispute with Debtor should not be litigated in the bankruptcy court. [dkt item 10 ¶53]

On June 30, 2010, in its Lift Stay Objection, Debtor asserted it  "has a realistic prospect of reorganization . . . [and] Joseph Weiser has the wherewithal to purchase the Property free and clear of all the liens and make distributions to creditors."  The Debtor further stated that it was prepared to make adequate protection payments and that it "had requested SPCP to provide the Debtor with the amount of an adequate protection payment, but that it had not been provided."

---

[2] Debtor was not listed as one of the defendants in the Foreclosure Action.  The named defendants were: JJF Garage, Inc. d/b/a Steamboat Landing; John Ferrara; Joseph Ferrara; Maria Ferrara; New York State Department of Taxation and Finance; Chesapeake Seafood & Crab Corp.; Big George LLC; and Glen Cove Marina.

[dkt item 17]

On July 6, 2010, when SPCP joined as a movant in the Lift Stay Motion, it joined in

BMR's allegations that this case was filed in bad faith, and that this two party

dispute should not be litigated in the bankruptcy court. [dkt item 19]

On July 7, 2010, when this Court held the Lift Stay Hearing, Debtor asked the Court and

SPCP for time for Debtor's principal, Weiser, to liquidate non-estate assets so that he could fund

adequate payments and to conduct due diligence with respect to a purchase of the Property.  By

agreement, the Court granted the relief set out in the Conditional Order [dkt item 25], which, *inter*

*alia*, directed Debtor to pay SPCP adequate protection on account of the Second Mortgage in the

sum of $152.77 per day for the period of April 26, 2010 through July 1, 2010, in the aggregate

amount of $10,082.82 (the "Adequate Protection Payment").  In accordance with the Conditional

Order, one-half of the Adequate Protection Payment ($5,041.41) was to be paid on or before July

9, 2010, and the remaining one-half to be paid on or before July 16, 2010.  The Conditional Order

also granted SPCP the right to submit an Order granting it relief from the automatic stay in the

event the Debtor failed to make any Adequate Protection Payment.

Weiser conducted ongoing due diligence, which revealed certain alleged damage to the

bulkhead on the Property.  Weiser obtained a contractors' estimate dated July 14, 2010, stating

that the bulkhead required more than $1 million of repairs. [dkt item 39 ¶¶45-46; Exh. 10]  Due to

the cost of these repairs, Weiser determined that it was too expensive for him to save the Property

through bankruptcy. [dkt item 39 ¶50]  Weiser, therefore, made a business decision on behalf of

Debtor that making the Adequate Protection Payments would be a waste of his money as he

would not be able to purchase the Property for what he considered to be a reasonable price. [dkt

item 39 ¶ 48]

On July 21, 2010, the Court entered an order granting SCPC relief from the automatic stay ("Lift Stay Order"). [dkt item 29; Exh. O]

Immediately after the Court entered the Lift Stay Order, on July 21, 2010, SPCP took steps to advertise the Foreclosure Sale, with the first publication of the scheduled sale appearing on July 29, 2010. [dkt item 39 ¶16; Exhs. 11, 16]

On July 23, 2010, the Debtor filed the Motion to Dismiss. [dkt item 31]

On August 13, 2010, SPCP filed the Motion to Convert. [dkt item 37]

On August 25, 2010, Debtor filed an order to show cause in the Foreclosure Action, and requested that the state court judge stay the foreclosure sale. [Exh. 11]

By order dated August 25, 2010, the state court temporarily stayed the foreclosure sale pending further submission and decision on that motion. [Exh. 12]

*Testimony at the Hearing*

Pursuant to the direction of this Court, all direct evidence for the Hearing was submitted by affidavits filed in advance of the Hearing. At the Hearing, on cross-examination, Ms. Dobrowsky testified that:

(a)     the Debtor had only one asset—the Property [Tr. at 89:18-23];

(b)     the Debtor did not hold any unencumbered interest in the Property or other assets [Tr. at 90:18-21];

(c)     the Property was transferred to the Debtor within close proximity to the filing of the chapter 11 case [Tr. at 91:5-10];

(d)     the Debtor had no cash flow [Tr. at 93:1];

(e)     the Debtor had no employees [Tr. at 93:8-9]; and

(f)     the Bankruptcy Case is really a two-party dispute between the Debtor and SPCP [Tr. at 95:8-20]; and

(g)     SPCP's purpose in seeking conversion was to enable a chapter 7 trustee to market and sell the Property [Tr. at 84:13-20; 96:1-9].

Although she testified that the purpose of the Motion to Convert was to enable a trustee to sell and market the Property, Ms. Dobrowsky did not deny that shortly after entry of the Lift Stay Order, SPCP and BMR proceeded to continue the Foreclosure Action and published notice of a foreclosure sale. [Tr. at 97:10-24]  Further, Ms. Dobrowsky testified that as of late July 2010, SPCP and BMR had no interest in having a trustee appointed, and that they were going to proceed with foreclosure. [Tr. at 98:1-6]  When asked why SPCP continued with the Foreclosure Action, Ms. Dobrowsky testified that it did so "[T]o see if the foreclosure sale would actually happen." [Tr. at 98:7-8] Ms. Dobrowsky also acknowledged that she became aware from SPCP's attorney that the appointment of a chapter 7 trustee would eliminate the Debtor's right to proceed to challenge the validity of the foreclosure judgment in the Foreclosure Action. [Tr. at 105:1-7]

As for Debtor, Weiser initially testified on cross-examination that he was ignorant of the Adequate Protection Order [Tr. at 44], but admitted that he made the business decision to not make the payments, citing the $1 million repair estimate he received for the bulkhead; he further acknowledged that debtor had commingled certain nominal amounts of its collections with non-debtor accounts, and that Debtor had failed to timely file monthly operating reports. [Tr. at 47-48]

## **Legal Analysis**

*Dismissal or Conversion Under Section 1112*

Section 1112(b)(1) of the Bankruptcy Code provides as follows:

Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112 (b)(1).  To obtain a voluntary dismissal of this case, Debtor has the burden to establish that cause exists for dismissal and demonstrate that such dismissal is "in the best interest of creditors and the estate." *See In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); *see also In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794 (Bankr. E.D. Pa. 2000); *In re OptInRealBig.com, LLC*, 345 B.R. 277, 282 (Bankr. D. Colo. 2006); *see also In re Warner*, 83 B.R. 807 (Bankr. M.D. Fla. 1988).  Similarly, to obtain conversion, SPCP must establish that cause exists to convert this case and that conversion is in the best interest of creditors and the estate. *Id.*[3]

The Bankruptcy Code provides a nonexhaustive list of circumstances constituting 'cause' under this Section 1112(b). *See* 11 U.S.C. § 1112(b)(4);[4] *see also Pal Family Credit Co., Inc. v.*

---

[3] Courts have not hesitated to convert a chapter 11 case to a chapter 7 case when cause exists. *See, e.g., In re Milford Conn. Assoc., L.P.*, 404 B.R. 699 (2d Cir. 2009) (holding that district court did not err in granting United States Trustee's motion for conversion to Chapter 7 when the debtor's failure to expeditiously administer the estate established sufficient cause for the conversion); *In re Halpern*, 229 B.R. 67, 73 (E.D.N.Y. 1999) (finding cause established under §1112(b) by debtor's series of motions and bankruptcy filings delaying the sale of properties by which debtor hoped to benefit from speculative increase in equity); *In re Photo Promotion Assoc., Inc.*, 47 B.R. 454 (S.D.N.Y. 1985) (finding cause existed to convert case to chapter 7 when debtor continued to sustain substantial losses during postpetition period).

[4] (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--

*County of Albany et al.*, 425 B.R. 1,5 (N.D.N.Y.2010); *In re Ameribuild Constr. Mgmt., Inc.* 399

B.R. 129, 132 (Bankr. S.D.N.Y. 2009). "Because the list of grounds for converting or dismissing

a Chapter 11 case under § 1112(b) is illustrative, not exhaustive, the court may consider other

grounds and use its equitable powers to reach an appropriate result." *AdBrite*, 290 B.R. at 217

(citing *C-TC 9th Ave. P'ship*, 113 F.3d at 1311).

In seeking dismissal, Debtor asserts that, because the stay has been lifted to allow

foreclosure of its sole asset, it cannot reorganize, and that because its unsecured creditors are de

minimis,[5] no purpose is served by this case remaining in bankruptcy.

In seeking conversion, SPCP asserts that a trustee can investigate Debtor's business

dealings and corral the estate's assets, and alleges that certain "badges of bad faith" were present

when Debtor filed the Petition.[6] SPCP asserts that certain factors demonstrating bad faith warrant

---

(A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)
[(4) For purposes of this subsection, the term 'cause' includes--

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; ]--

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

[5] Debtor's Schedules, filed in incomplete form on May 10, 2010, state a total of unsecured claims of $6,900.00, although the actual Schedule F was not filed. Debtor lists the Property as having a value of $1.4 million and being subject to a claim of $1.7 million on Schedule A, but did not file Schedule D. [dkt item 9]

[6] When BMR originally sought stay relief or dismissal in its Lift Stay Motion, in which SPCP filed a joinder, BMR and SPCP alleged the following factors supported dismissal:

(I)      the Debtor had no equity in the Property;
(ii)     the Debtor has no assets other than the Property;
(iii)    the Debtor has no cash flow;

a conversion:

(1)     the debtor has only one asset;

(2)     the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)     the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)     the debtor's financial condition is, in essence, a two- party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5)     the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)     the debtor has little or no cash flow;

(7)     the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8)     the debtor has no employees.

[dkt item 52](citing *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311(2d Cir. 1997).

Here, the parties do not dispute that cause exists to either dismiss or convert this case. Rather, they disagree over which remedy the Court should order.  Therefore, the Court must determine whether dismissal or conversion to chapter 7 is in the best interests of creditors and the estate.

*The Test to Dismiss or Convert*

In spite of their well pleaded allegations, what both Debtor and SPCP are actually seeking

---

(iv)     the Debtor has no unsecured creditors; and

(v)     the chapter 11 case amounted to a two-party dispute.

[dkt item 10](citing *In re Consulting Actuarial Partners*, 72 B.R. 821, 826 (Bankr. S.D.N.Y. 1987).

is a litigation advantage.  Debtor has lost the benefits of bankruptcy and the protection of the automatic stay and now wants to litigate the underlying foreclosure issues in state court.  SPCP wants a chapter 7 trustee to assume control over the state court litigation issues that relate to the foreclosure.  In essence, the creditor now seeks to use the protections of the bankruptcy process for its own benefit, after seeking dismissal for its own benefit.

Courts that have addressed Section 1112 (b) have not developed a bright-line test to determine when conversion or dismissal is in the best interests of creditors and the estate.  To this Court, it would seem an improper construction of Section 1112 to employ the same factors that are used to determine whether cause exists to dismiss or convert a case to also determine whether to choose conversion over dismissal, or dismissal over conversion.  Section 1112(b)(1) expressly provides that "the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause" (emphasis supplied), unless the court finds "unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."   Had Congress intended that certain of the enumerated items defined as constituting cause under Section 1112(b)(4) weighed in favor of dismissal over conversion, Congress would have provided that "cause for conversion" exists under certain elements, whereas "cause for dismissal" exists under other defined elements.  When reading a statute, if the meaning is clear, the analysis of the words ends there. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("Congress 'says in a statute what it means and means in a statute what it says there.'" (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992)).  Because Congress chose not to differentiate dismissal

factors from conversion factors, and because this Court finds that the words of Section 1112(b) are clear, the factors utilized to find cause cannot be the same factors utilized to choose conversion over dismissal, or dismissal over conversion.

The issue, then, is what test should be employed to choose between dismissal and conversion. Collier's treatise on bankruptcy identifies ten factors useful to establishing whether dismissal or conversion is in the best interests of creditors and the estate:

1.  Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;

2.  Whether there would be a loss of rights granted in the case if it were dismissed rather than converted;

3.  Whether the debtor would simply file a further case upon dismissal;

4.  The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

5.  Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;

6.  Whether any remaining issues would be better resolved outside the bankruptcy forum;

7.  Whether the estate consists of a "single asset";

8.  Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

9.  Whether a plan has been confirmed and whether any property remains in the estate to be administered; and

10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

COLLIER ON BANKRUPTCY ¶ 1112.04[7]; at 1112-39-1112-40; *see also In re Van Eck*, 425 B.R. 54, 67 (Bankr. D.Conn. 2010) (finding the court may appoint a trustee if such appointment is in the best interest of creditors).

The factors outlined in Collier's appear to be an appropriate starting point.  As this is a single-asset case in which a plan has not been confirmed and will not be confirmed, no sale of assets has been approved, and the stay has been lifted, this Court will consider the following factors in determining whether to convert or dismiss: the known assets to administer; the impact of dismissal or conversion on creditors; any known available avoidance actions; the position of the United States Trustee; and the Court's interest in protecting the bankruptcy process.

### A.       Assets to Administer

SPCP asserts that creditors would benefit from the appointment of a chapter 7 trustee to oversee the liquidation and distribution of the assets.  Because the Property is the only asset of Debtor, the stay has been lifted, and SPCP could foreclose at any time under the auspices of the state court, there may not be any assets for a trustee to administer.  Moreover, even if a trustee had some defined period of time to sell the Property, which he would not, it is not clear that there is any benefit of allowing a chapter 7 trustee to sell the Property, as there appears to be no equity in the Property.  SPCP alleged and affirmed when seeking stay relief that the estate has no equity in the Property [dkt item 10 ¶¶32-39].  Debtor admitted it lacked equity in the Property in its Schedules.  Now, when conversion suits its needs, SPCP is hedging if not reversing its position on whether the Property is worth more or less than the debt owed SPCP. [Tr. at 120-21]  Even though SPCP obtained stay relief by consent, in a single asset case such as this, such changes of position on such a central issue should be frowned upon.

Further, as a secured creditor, SPCP acquired certain bargained-for protections in the event the borrower under the First Mortgage and Second Mortgage did not comply with its contractual obligations.  With the stay lifted, SPCP is now unhindered by this bankruptcy filing from enforcing its contractual rights and exercising its creditor remedies.

B.      *Impact of Dismissal or Conversion on Creditors*

This Court entered a bar date order on July 16, 2010, establishing the last day to file a general unsecured proof of claim at September 15, 2010. [dkt item 28 ]  The Court notes that the only creditor appearing on the claims register as having filed a proof of claim in this case as of the date of this decision is SPCP.  As noted above, Debtor scheduled unsecured claims totalling $6,900.00. [dkt item 9]

Dismissal would not affect SPCP's creditor's rights under state law because, as noted, the automatic stay has already been lifted.  Unsecured creditors would not be adversely affected by dismissal because they can pursue their state law rights against Debtor post-dismissal.  As discussed, a conversion of this case to chapter 7 would substitute the trustee, as owner of the Property, as an intervener in the Foreclosure Action, but with none of the history of involvement that Weiser has, and with no assets to fend off the Foreclosure Action.  Whether SPCP correctly presumes that a chapter 7 trustee in such a position would not want to engage in litigation that would simply slow down the foreclosure process, any such litigation would be extremely unlikely to yield any positive benefit for the creditors of this estate.   Further, a chapter 7 trustee would have no assets with which to protect or preserve the Property, and would simply have to rely on SPCP's good graces to allow him or her enough time to market and sell the Property for an amount exceeding the secured debt and the costs attendant to such a sale in order to generate a

dividend for the unsecured creditors who, thus far, have not filed any proofs of claim.  Thus, this Court cannot conclude that conversion enhances the rights of creditors other than SPCP, or of the estate generally.

C.      Avoidance Actions

SPCP did not adduce any evidence at trial that any significant prepetition transfers were made by Debtor that could be recovered for the benefit of the estate.  Moreover, neither the Schedules nor the Statement of Financial Affairs filed by Debtor reflects any prepetition, avoidable transfers. [dkt item 10]  Although avoidance actions, if any, that arise solely under the Bankruptcy Code would be the sole domain of this Court, unsecured creditors retain their rights post-dismissal to commence creditors rights actions as recognized under applicable New York Debtor and Creditor Laws. See 11 U.S.C. § 349.

D.      Position of the United States Trustee

The United States Trustee (the " UST") is appointed pursuant to Title 28, Section 581.[7] 28 U.S.C. § 581.  Among the statutory functions of the UST is to maintain and supervise a panel of trustees eligible to serve in chapter 7 and 11 cases, and to supervise the administration of cases and trustees in cases under chapters 7, 11, 12, 13, and 15 of title 11. 28 U.S.C. § 586(a).  Many of the assigned UST functions are in monitoring cases and filing pleadings or providing comments on a number of facets of bankruptcy matters.  As such, a certain degree of deference should be given to the position of the UST.

---

[7] The statute applies to United States Trustees appointed in all federal judicial districts except Alabama and North Carolina, which instead have Bankruptcy Administrators. See 28 U.S.C. § 581 Note (3); see also http://www.uscourts.gov/bankruptcycourts/administrators.html.

Here, the UST asserted after the Hearing that their office favored conversion over dismissal, in light of debtor's failure to file operating reports and disclose its full financial position. [Tr. at 137-39]  This Court certainly gives due weight to this position in its decision to dismiss this case, and notes that, after the conclusion of the Hearing, Debtor did file monthly operating reports spanning from the Petition Date through August 31, 2010. [dkt items 48-51] These reports reveal *de minimis* operating activity.

E.      The Court's Interest in Protecting the Bankruptcy Process

The Court must balance the competing benefits the bankruptcy process offers to both debtors and creditors.  Just as a debtor should not be permitted to remain in bankruptcy to reap the benefits against creditors, "a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits to creditors." *In re Mazzacone*, 183 B.R. 412-413 (Bankr. E.D. Pa. 1995).  Here, creditors would not benefit from a chapter 7 trustee's oversight and preservation of SPCP's collateral because the automatic stay has been lifted for SPCP to enforce its rights under state law, but, as noted, SPCP would simply prolong the case to gain a perceived litigation advantage.

Further, the benefit to a single creditor, rather than all the creditors, is another factor for the Court to consider. *Compare Mazzacone*,[8] 183 B.R. at 413 (weighing benefit of conversion

---

[8] The *Mazzocone* court considered the following factors favoring conversion and those favoring dismissal, and determined that the case should be dismissed: Debtor and U.S. Trustee both favor dismissal; state law proceedings pursued after the prior dismissal which are now poised to go forward; debtor no longer wishes to utilize the bankruptcy process for any of its intended purposes; any pending disputes are basically two-party disputes involving only state law issues; the protection against unlawful dissipation of assets sought by the creditors is also clearly available under state law; the creditor's preference for conversion is partially in the nature of forum shopping; the ability or interest of the chapter 7 trustee to assist creditor regarding alleged dissipation of assets and pursuit of creditor's claim is unclear or non-existent; conversion entails added administrative expenses; an absence of allegations that preference recoveries or bankruptcy causes of action will be lost; and dismissal of the chapter 11 case preserves time and resources of Bankruptcy Court from onerous and time consuming non-bankruptcy related issues. *Mazzacone*, 183 B.R. at 414-16.

versus dismissal when there is a single creditor) *with In re Staff Inv. Co.*, 146 B.R. 256, 261-62 (Bankr. E.D. Cal. 1992)(noting that interest of every creditor not necessary if single creditor has a large enough claim).  At best, a conversion to a case under chapter 7 would create a limited opportunity for a sale of the Debtor's sole asset, the Property, but, the only creditor to benefit from such a sale would be SPCP, which already has rights to liquidate the Property to pay its claim.  Said otherwise, while SPCP may benefit from conversion, other creditors would not, and the estate would not.

This case is basically a two-party dispute. *See Mazzacone*, 183 B.R. at 418-19.  The state court which has jurisdiction over the Foreclosure Action is well qualified to settle that dispute.  Thus, there is no overarching issue here in protecting the bankruptcy process because the process has worked.

*The Court Cannot Find that Conversion Is in the Best Interest of Creditors of the Estate*

This Court cannot conclude that the estate would benefit by the conversion of this case to chapter 7 and the appointment of a chapter 7 trustee. *Cf. In re Ameribuild Constr. Mgmt., Inc*. 399 B.R. 129, 133-34 (Bankr. S.D.N.Y. 2009)(finding that the appointment of an independent fiduciary to examine transactions between the Debtor and other entities would benefit the creditors of the estate).  There appears to be no legitimate purpose served in conversion, and no assets for a trustee to administer.

SPCP relies on its assertion that Debtor filed this case in bad faith and three specific Section 1112(b) factors apply as warranting a conversion:

(A) Substantial or continuing loss to or diminution of the estate and the absence of a

reasonable likelihood of rehabilitation

* * *

(E) failure to comply with an order of the court; and

* * *

(F) unexcused failure to satisfy timely any filing or reporting requirements established by this title or by any rule applicable to a case under this chapter

11 U.S.C. § 1112(b)(4)(A),(E), and (F).  However, as noted, while these factors would be utilized in determining if cause exists to dismiss or convert, these would not then be elements to rely upon to choose as between dismissal and conversion.

### Conclusion

Based on the foregoing, this Court concludes that the best interests of creditors and the estate favor dismissal of this case.  A separate order  shall issue, providing for dismissal upon payment by Debtor of any outstanding United States Trustee's fee.

**Dated: November 1, 2010**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**